UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

JAN 2 8 2015

David J. Bradley, Clerk of Court

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| | § | Criminal No. |
| v. | § | |
| | § | UNDER SEAL |
| GEORGIA DOLEMAN aka | § | |
| GEORGIA WEBER, | § | |
| DAMION DOLEMAN, | § | **15-049** |
| JERMAINE DOLEMAN, and | § | |
| DEANDRE HOOD, | § | |
| | § | |
| Defendants. | § | |

INDICTMENT

The Grand Jury charges:

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

### General Allegations

At all times material to this Indictment, unless otherwise specified:

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home health services because of an illness or disability causing them to be homebound. Payments for home healthcare services were typically made directly to a HHA based on claims submitted to

the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4. Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5. The Medicare program paid for home health services only if the patient qualified for home healthcare benefits. A patient qualified for home healthcare benefits only if:

    a. the patient was confined to the home, also referred to as homebound;

    b. the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC"); and

    c. the determining physician signed a certification statement specifying that:

        i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

        ii. the beneficiary was confined to the home;

        iii. a POC for furnishing services was established and periodically reviewed; and

        iv. the services were furnished while the beneficiary was under the care of the physician who established the POC.

6. Medicare regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

7. These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA.

8. Joystar Home Health Services, LLC ("Joystar") was a Texas corporation doing business at 1601 Main Street, Suite 504, Richmond, Texas 77469. Joystar submitted claims to Medicare for home health services.

9. Stella Maduka, was an Officer, the Director of Nursing, and an Authorized Official of Joystar. She was a registered nurse.

10. Felix Maduka was an Administrator, Authorized Official, Director, and Owner of Joystar.

11. Patrice Maureen Weber was a patient recruiter for Joystar.

### DEFENDANTS

12. Defendant **GEORGIA DOLEMAN**, a resident of Harris County, Texas, was a patient recruiter for Joystar.

13. Defendant **DAMION DOLEMAN**, a resident of Harris County, Texas, was a patient recruiter for Joystar.

14. Defendant **JERMAINE DOLEMAN**, a resident of Harris County, Texas, was a patient recruiter for Joystar.

15. Defendant **DEANDRE HOOD**, a resident of Austin County, Texas, was a patient recruiter for Joystar.

## COUNT 1
### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

16. Paragraphs 1 through 15 are re-alleged and incorporated by reference as if fully set forth herein.

17. From in or around 2009 through in or around January 2014, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**GEORGIA DOLEMAN,
DAMION DOLEMAN,
JERMAINE DOLEMAN, and
DEANDRE HOOD**

did knowingly and willfully combine, conspire, confederate and agree with Felix Maduka, Stella Maduka, and others known and unknown to the grand jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items and services.

### Purpose of The Conspiracy

18. It was a purpose of the conspiracy for defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN,** and **DEANDRE HOOD** and their co-conspirators to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt

and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for the personal use and benefit of defendants and their co-conspirators.

## Manner and Means of The Conspiracy

The manner and means by which defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN,** and **DEANDRE HOOD** and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

19. Felix Maduka and Stella Maduka maintained a Medicare provider number for Joystar, which they used to submit claims to Medicare for home health services that were not medically necessary or not provided.

20. Stella Maduka and Felix Maduka paid defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN,** and **DEANDRE HOOD** and others to refer Medicare beneficiaries to Joystar for home health services.

21. Joystar billed Medicare for home health services that were not provided to those beneficiaries and/or were not medically necessary for those beneficiaries.

22. Defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN,** and **DEANDRE HOOD** paid kickbacks to physicians in exchange for those physicians authorizing medically unnecessary home health services to the beneficiaries who they referred to Joystar.

23. Defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN,** and **DEANDRE HOOD** referred Medicare beneficiaries to Joystar for admission or re-admission to home health services even though they did not qualify for such services under Medicare.

24. Defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN**, and **DEANDRE HOOD** paid some Medicare beneficiaries for allowing Joystar to use their Medicare information to bill Medicare for home health services that they did not need, qualify for, or receive.

25. From in or about July 2009 to in or about January 2014, Felix Maduka and Stella Maduka submitted and caused to be submitted approximately $2,022,007.69 in claims to Medicare for home health services purportedly provided by Joystar to beneficiaries referred by defendants. Medicare paid approximately $2,519,034.54 for those claims.

26. After Medicare deposited payments into Joystar's bank accounts, Felix Maduka and Stella Maduka transferred proceeds of the fraud to defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN**, and **DEANDRE HOOD**, themselves, and their co-conspirators.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-5
### Healthcare Fraud
### (Violation of 18 U.S.C. §§ 1347 and 2)

27. Paragraphs 1 through 15 and 19 through 26 are re-alleged and incorporated by reference as if fully set forth herein.

28. On or about the dates specified below, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**GEORGIA DOLEMAN,**
**DAMION DOLEMAN,**
**JERMAINE DOLEMAN, and**
**DEANDRE HOOD**

aiding and abetting others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items, and services, did knowingly and willfully execute

6

and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, as set forth below:

| Count | Defendant | Medicare Beneficiary | Approximate Dates of Claim | Approximate Medicare Payment |
|---|---|---|---|---|
| 2 | GEORGIA DOLEMAN | C.J. | July 9, 2012 to September 6, 2012 | $4,677.24 |
| 3 | DAMION DOLEMAN | N.H. | September 24, 2013 to October 15, 2013 | $937.76 |
| 4 | JERMAINE DOLEMAN | J.J. | January 13, 2012 to March 12, 2012 | $2,148.50 |
| 5 | DEANDRE HOOD | W.T. | July 16, 2013 to September 13, 2013 | $4,477.05 |

## COUNT 6
### Conspiracy to Pay Healthcare Kickbacks
### (Violation of 18 U.S.C. § 371)

29. Paragraphs 1 through 15 and 19 through 26 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

30. From in or around 2009 through in or around January 2014, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**GEORGIA DOLEMAN,
DAMION DOLEMAN,
JERMAINE DOLEMAN, and
DEANDRE HOOD**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the grand jury, to commit certain offenses against the United States, that is,

  a.   to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and

indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for, and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

  b. to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare or Medicaid; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

### Purpose of The Conspiracy

31. It was a purpose of the conspiracy for defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN,** and **DEANDRE HOOD** and their co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries for whom Joystar submitted claims to Medicare.

### Manner and Means of The Conspiracy

The manner and means by which defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN,** and **DEANDRE HOOD** and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

32. Paragraphs 19 through 26 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

### Overt Acts

33. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

a. On or about July 9, 2012, Stella Maduka or Felix Maduka paid defendant **GEORGIA DOLEMAN** approximately $200 for referring Medicare beneficiary C.J. to Joystar for home health care services.

b. On or about September 20, 2012, Stella Maduka or Felix Maduka paid defendant **GEORGIA DOLEMAN** approximately $200 for referring Medicare beneficiary R.J. to Joystar for home health care services.

c. On or about September 24, 2013, Stella Maduka or Felix Maduka paid defendant **DAMION DOLEMAN** approximately $300 for referring Medicare beneficiary N.H. to Joystar for home health care services.

d. On or about January 5, 2012, Stella Maduka or Felix Maduka paid defendant **JERMAINE DOLEMAN** approximately $300 for referring Medicare beneficiary J.J. to Joystar for home health care services.

e. On or about July 16, 2013, Stella Maduka or Felix Maduka paid defendant **DEANDRE HOOD** approximately $500 for referring Medicare beneficiary W.T. to Joystar for home health care services.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 7-11

### Payment and Receipt of Healthcare Kickbacks
### (Violation of 42 U.S.C. § 1320a-7b(b)(1) and (b)(2), 18 U.S.C. § 2)

34. Paragraphs 1 through 15 and 19 through 26 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

35. On or about the dates enumerated below, in Harris County, in the Southern District of Texas, and elsewhere, defendants as set forth below, aiding and abetting others known and unknown to the Grand Jury, did knowingly and willfully offer, pay, solicit, and receive remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare as set forth below:

| Count | Defendant(s) | On Or About Date | Approximate Amount of Kickback |
|---|---|---|---|
| 7 | GEORGIA DOLEMAN | July 9, 2012 | $200 |
| 8 | GEORGIA DOLEMAN | September 20, 2012 | $200 |
| 9 | DAMION DOLEMAN | September 24, 2013 | $300 |
| 10 | JERMAINE DOLEMAN | January 5, 2012 | $300 |
| 11 | DEANDRE HOOD | July 16, 2013 | $500 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1) and (b)(2) and Title 18 United States Code, section 2.

10

## CRIMINAL FORFEITURE
## (18 U.S.C. § 982(a)(7))

36. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN**, and **DEANDRE HOOD** that upon conviction of any Counts in this Indictment, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses, is subject to forfeiture.

37. Defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN**, and **DEANDRE HOOD** are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

38. Defendants **GEORGIA DOLEMAN, DAMION DOLEMAN, JERMAINE DOLEMAN**, and **DEANDRE HOOD** are notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of defendants or their co-conspirators:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred, or sold to, or deposited with a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

William S.W. Chang
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE